People v Sears (2018 NY Slip Op 07197)





People v Sears


2018 NY Slip Op 07197


Decided on October 25, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 25, 2018

108219

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
EMILY A. SEARS, Appellant.

Calendar Date: April 26, 2018

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Rumsey, JJ.


Noreen McCarthy, Keene Valley, for appellant.
Craig P. Carriero, District Attorney, Malone (Jennifer M. Hollis of counsel), for respondent.



MEMORANDUM AND ORDER
Motion for reconsideration and reargument and/or permission to appeal to the Court of Appeals.
Upon the papers filed in support of the motion and the papers filed in response thereto, it is
ORDERED that the motion for reconsideration and reargument is granted, the memorandum and order decided and entered July 5, 2018 (163 AD3d 1040) is vacated, and the attached memorandum and order is substituted therefor, and it is further
ORDERED that the motion for permission to appeal to the Court of Appeals is referred to Justice Rumsey, who makes the following decision: Motion denied.
Rumsey, J.
Appeals (1) from a judgment of the Supreme Court (Main Jr., J.), rendered February 2, 2016 in Franklin County, which revoked defendant's probation and imposed a sentence of incarceration, and (2) from a judgment of said court, rendered November 1, 2016 in Franklin County, convicting defendant upon her plea of guilty of the crime of criminal contempt in the second degree (two counts).
In August 2015, defendant was subject to the terms and conditions of a sentence of probation and an order of protection that directed her to stay away from Thomas Collins. On August 18, 2015, Geoffrey Carmichael, a police sergeant with the Saranac Lake Police Department, entered defendant's apartment without a search warrant and found Collins to be present. Defendant was subsequently charged by superior court information with two counts of criminal contempt in the second degree based on allegations that she had allowed Collins to enter her apartment on August 3, 2015 (count 1) and August 18, 2015 (count 2) in violation of the order of protection. The case was removed from Town Court to the Integrated Domestic [*2]Violence part of Supreme Court. A declaration of delinquency was also issued alleging that defendant had violated the terms and conditions of her probation. After a hearing, Supreme Court found that defendant had willfully violated the terms and conditions of her probation by voluntarily allowing Collins to be present in her apartment on August 18, 2015, revoked her probation and sentenced her to a 365-day jail term.
Defendant moved to suppress all evidence derived from the search of her apartment on August 18, 2015. After a hearing, Supreme Court denied defendant's motion. Thereafter, defendant pleaded guilty to the two counts of criminal contempt in the second degree upon Supreme Court's assurance that she would receive concurrent sentences of 180 days in jail on each count, and the court sentenced her accordingly. Defendant appeals from the judgment revoking her probation and the judgment convicting her, upon her guilty plea, of two counts of criminal contempt in the second degree.
Defendant argues that Supreme Court erred in denying her motion to suppress because the police entered her apartment without a warrant with the primary expectation of finding and apprehending Collins. The People assert that the warrantless entry was justified by the emergency exception based on information that led the police to believe that there was the possibility of an ongoing crime in defendant's apartment. "Subject only to carefully drawn and narrow exceptions, a warrantless search of an individual's home is per se unreasonable and hence unconstitutional" (People v Jenkins, 24 NY3d 62, 64 [2014] [internal quotation marks, brackets and citation omitted]). However, the emergency exception to the warrant requirement allows the police to enter a home without a warrant if the following factors exist: "(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" (People v Gibson, 117 AD3d 1317, 1318 [2014] [internal quotation marks and citation omitted], affd 24 NY3d 1125 [2015]; accord People v Musto, 106 AD3d 1380, 1381 [2013], lv denied 21 NY3d 1007 [2013]). Further, the emergency exception "must be narrowly construed because it is susceptible of abuse and may be used to validate an otherwise unlawful arrest or seizure" (People v Williams, 146 AD3d 906, 908 [2017] [internal quotation marks and citations omitted], lv denied 29 NY3d 1002 [2017]; see People v Gallmon, 19 NY2d 389, 394-395 [1967], cert denied 390 US 911 [1968]).
During the evening of August 18, 2015, police received a telephone call from the occupant of a first-floor apartment located directly below defendant's second-floor apartment reporting that she heard noises emanating from defendant's apartment suggesting that someone was present and, further, that she was concerned about the noises because she believed that defendant was incarcerated. Carmichael contacted the Franklin County Jail and learned that defendant had been released and was no longer incarcerated. Nonetheless, he went to defendant's apartment with two other officers, who remained outside the building, for the stated reason of investigating whether there was a burglary or trespass in progress at defendant's apartment. Carmichael entered the building and went to the front door of defendant's apartment at approximately 11:23 p.m. He testified that he heard a faint chirping sound that sounded like a low battery alert from a smoke detector and a low, muffled sound that he could not identify. One of the officers located outside the building advised Carmichael that faint lights that appeared to be from a television were visible through an apartment window. Carmichael knocked several times with no response. After speaking briefly with the property manager by telephone, he again knocked several times while loudly identifying himself as a police officer. When there was no response, he forced the door open and entered the apartment with his pistol drawn. The apartment was dark, with the only light provided by his flashlight.
When Carmichael entered, he ordered anyone present to come out of the bedroom. Defendant responded by stating she was naked and was attempting to dress herself. Carmichael commanded that she come out of the bedroom immediately. She complied, and came out of the bedroom naked from the waist up. Carmichael ordered defendant to put on a shirt and then [*3]handcuffed her hands behind her back. Defendant told Carmichael that she had been watching television and that there were no other persons in the apartment. She did not ask for any assistance nor provide consent for a search of her apartment. Carmichael proceeded to search defendant's bedroom with his pistol drawn and found Collins hiding in a pile of clothes.
We conclude that Carmichael's testimony established that there was not an objectively reasonable basis for him to believe that there was an ongoing emergency in defendant's apartment that required immediate assistance to protect life or property. Carmichael was aware that defendant was no longer incarcerated. There was no evidence that defendant's apartment had been forcibly entered, nor was there any other indication of an ongoing crime or emergency. The low, muffled sound that he heard and the faint light that was seen through the window were consistent with an occupant watching television, a reasonable activity at that hour of night. Moreover, Carmichael's testimony further established that the police may have been motivated to search defendant's apartment by the possibility of locating Collins there and arresting him. Carmichael confirmed that he was aware that there was an outstanding warrant for Collins' arrest. The police had been advised that Collins had been seen in the vicinity of defendant's apartment during the evening in question, and they considered the possibility that he was at her apartment in violation of the order of protection. After Carmichael handcuffed defendant, he reported by radio to the other officers on the scene that he had detained the "female subject," and, when he located Collins, he stated that he had detained "that other subject."
Further, even had Carmichael's initial entry been lawful, his subsequent search of defendant's apartment was not. A protective sweep is justified only when the police "have articulable facts upon which to believe that there is a person present who may pose a danger to those on the scene" (People v Harris, 141 AD3d 1024, 1027 [2016] [internal quotation marks and citation omitted]; see People v Jenkins, 24 NY3d at 65). Upon entry, Carmichael found that the apartment was occupied by defendant — known by him to be the tenant entitled to occupy the apartment — who told him that she was watching television, denied that anyone else was present and made no request for assistance. Thus, the facts known to Carmichael did not reasonably support the belief that there was any danger to himself or to defendant. Accordingly, Supreme Court erred in denying defendant's motion to suppress. Consequently, the judgment rendered November 1, 2016 convicting defendant, upon her plea of guilty, of two counts of criminal contempt in the second degree must be reversed (see People v Clark, 45 NY2d 432, 440 [1978]; People v Hazen, 20 AD3d 586, 587 [2005], lv denied 5 NY3d 806 [2005]; People v Puckett, 270 AD2d 364, 365 [2000]).
At the violation of probation hearing, Supreme Court denied defendant's motion that evidence obtained on the warrantless search be suppressed. Evidence that is unlawfully seized cannot be used as a basis for revoking a probationary sentence (see People v Robinson, 128 AD3d 1464, 1465 [2015]) and, as we have concluded, the search of defendant's apartment was unlawful. Thus, Supreme Court erred in admitting evidence from that search. Inasmuch as Carmichael's testimony about the events of August 18, 2015 was the only evidence showing that defendant had violated the conditions of her probationary sentence, the judgment rendered February 2, 2016 must be reversed.
Garry, P.J., Egan Jr., Clark and Mulvey, JJ., concur.
ORDERED that the judgment rendered February 2, 2016 is reversed, on the law, and violation of probation petition dismissed.
ORDERED that the judgment rendered November 1, 2016 is reversed, on the law, motion to suppress granted and matter remitted to the County Court of Franklin County for further proceedings not inconsistent with this Court's decision.